# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

TRUSTMARK INSURANCE COMPANY,
an Illinois corporation,

      Plaintiff,

          v.

JOHN HANCOCK LIFE INSURANCE
COMPANY, a Massachusetts corporation,

      Defendant.

No. 09 C 3959
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

At issue in this case is whether Defendant John Hancock Life Insurance Company

("Hancock"), through certain 1997 reinsurance contracts with Plaintiff Trustmark Insurance

Company ("Trustmark"), ceded to Trustmark "retrocessional business" in addition to the "direct

business" that both parties agree was part of the deal.[1]  These reinsurance contracts each contain

a mandatory arbitration clause for disputes relating to the interpretation or performance of the

agreements, including their "formation or validity, or any transaction" arising under the

agreements.  The contract specifies that "[a]ll arbitrators and their companies must be

disinterested in the outcome of the arbitration."  Hancock initiated arbitration (the "First

Arbitration") in 2002, after Trustmark refused to honor billings associated with Hancock's

retrocessional business.  Hancock's party-appointed arbitrator was ███████████.  As part of

this arbitration, the parties entered into a Confidentiality Agreement, under which the documents

---

[1] "Direct business" is Hancock's reinsurance for companies offering direct insurance to
the public.  "Retrocessional business" is reinsurance that Hancock provides to other reinsurers.

exchanged, testimony given, and the ultimate award were subject to confidentiality. Each arbitrator also signed the Agreement, which did not contain an arbitration clause. In March 2004, after a two-week hearing, the arbitration panel found that retrocessional business was "covered and properly ceded to the contracts in dispute." On June 17, 2004 I issued an order confirming the award and its confidentiality, pursuant to the Confidentiality Agreement.

Following the First Arbitration, Hancock sent Trustmark a new billing which was once again disputed by Trustmark. Hancock, again, initiated arbitration (the "Second Arbitration"), and appointed ███████, who also served on the panel of the First Arbitration. In December 2005, the parties conducted an organizational meeting, at which Trustmark representatives expressed some concern with regard to ███████ ability to honor the Confidentiality Agreement he had signed. ███████ expressed that although he "would scrupulously abide by confidentiality," he might find it "hard to segregate, difficult to deal with" particular knowledge he had from the First Arbitration that other panelists in the Second Arbitration did not have. After questioning by Trustmark representatives, Trustmark agreed to the appointment.

During the Second Arbitration, Hancock, over Trustmark's objection, requested that the panel "expressly authorize the use of all materials from [the First Arbitration], without limitation[,]" so that the parties could avoid relitigating issues decided in the First Arbitration - namely, whether retrocessional business was covered by the contracts. Hancock's arbitrator, ███████, despite being a signatory to the Confidentiality Agreement, did not recuse himself from the deliberations as to whether the second panel could grant such a request. ███████, joined by the Umpire, ███████, issued Interim Award #10, in which the Panel "accept[ed] and extend[ed] the confidentiality of the [F]irst [A]rbitration to the two members of the current

arbitration (███████ and ████████████ [Trustmark's appointed arbitrator]) who were not parties to the previous arbitration." Approximately one month later, Hancock requested that the second panel issue an order prohibiting Trustmark from litigating nineteen matters that it argued were resolved by the first panel. After receiving briefing on the issue, the panel, in a 2-to-1 decision, with ███████ and ████ in the majority, ruled that Trustmark was precluded from relitigating numerous issues, including the claim that retrocessional business was not covered by the reinsurance contracts.

Trustmark argues that in the First Arbitration, Hancock fraudulently concealed certain evidence material to the question of whether retrocessional business was properly ceded under the contracts, thereby procuring the First Arbitration's result by fraud. According to Trustmark, the preclusion order by the second panel is therefore tainted and the Second Arbitration should be enjoined to stop Hancock from furthering its fraudulent scheme. Trustmark now moves to enjoin further breaches of the Confidentiality Agreement (the initial breaches of which resulted in the preclusion order), obstruction of access to documents relating to the terms of the reinsurance agreement, and participation in the Second Arbitration with any of the panel members currently on the second panel. Since the Motion for Preliminary Injunction was filed, Hancock has agreed to abandon its preclusion claim, allowing the parties to relitigate, in light of allegedly concealed (and newly revealed) evidence, the question of whether the retrocessional business was properly ceded to Trustmark. Hancock has also agreed to participate in further discovery, again in light of

the newly revealed documents.  For these reasons, Trustmark's first two requests for relief are

moot and I need not address their supporting arguments, including the allegations of fraud.[2]

As to enjoining the scheduled Second Arbitration, Trustmark bases its motion on two

grounds.  First, Trustmark maintains an injunction is necessary to prevent the second panel from

resolving disputes between the parties over the Confidentiality Agreement, which, Trustmark

asserts, is not subject to arbitration.  Second, Trustmark argues that ███████ breached the

Confidentiality Agreement when he participated in deliberations on the issue of whether it should

be extended, also necessitating injunction in order to put an end to ███████ arbitral services, as

he is no longer "disinterested."

For the following reasons, Trustmark's motion is granted in that I am enjoining the

parties' participation in the Second Arbitration with ███████ on the panel.  However, I decline to

find that umpire ████ and Trustmark's party-appointed arbitrator ████████ need be removed

from the Panel.

## II.  STANDARD OF REVIEW

In seeking a preliminary injunction, Trustmark must demonstrate (1) a likelihood of

success on the merits; and (2) the absence of a remedy at law or irreparable harm if injunction is

denied.  *See Plummer v. American Inst. Of Certified Public Accountants*, 97 F.3d 220, 229 (7th

Cir. 1996); *and Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).  If these

---

[2]  Because Hancock has agreed to set aside the preclusion order and relitigate the issue of
whether its retrocessional business was properly ceded, I see no need to address these arguments.
Trustmark raises them (1) because the breach of the Confidentiality Agreement was a necessary
condition to the issuance of the preclusion order; and (2) because a result procured by fraud in
the First Arbitration would taint the Second Arbitration, specifically with respect to the
preclusion order.  However with the preclusion order out of the picture, and the fruits of the
poisoned tree removed, the issue is moot.

conditions are met, the court must next "consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied[,]" as well as the public interest in granting or denying the injunction. *Ty, Inc.*, 237 F.3d at 895 (citing *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994)).  The court must then weigh all the factors employing a "sliding scale" approach - "the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *Id.*

## III.  DISCUSSION

Trustmark seeks to enjoin the Second Arbitration on the ground that the Confidentiality Agreement is non-arbitrable.  Trustmark seeks to disqualify ████ on the grounds that: (1) he is not a "disinterested" party, as required under the reinsurance contracts; and (2) he has disclosed confidential information from the First Arbitration to the second panel.

Hancock maintains that this challenge is premature under *Smith v. Am. Arbitration Ass'n, Inc.*, 233 F.3d 502, 506 (7th Cir. 2000), which stated that the time to challenge an arbitration on any grounds is post-award.  However, the Seventh Circuit in *Duthie v. Matria Healthcare, Inc.*, 540 F.3d 533 (7th Cir. 2008), affirmed a pre-award injunction where the arbitration clause did not provide for the arbitration of a specific dispute at issue.  Trustmark cites *Duthie*, arguing that its challenge to Hancock is not premature, and that parties may bring pre-award challenges based on contract claims, in other words, those not grounded in the FAA.  Trustmark maintains that it is not challenging ████ partiality or bias, but rather the Panel's infection by ████ breach of the Confidentiality Agreement.  Trustmark's Underwriting Agreement with Hancock requires the arbitration of disputes by arbitrators who are "disinterested in the outcome of the

5

arbitration." Trustmark maintains that ████ can in no way be "disinterested" in construing the Confidentiality Agreement to which he is a party.

Trustmark argues that ████ is not "disinterested" for two reasons: (1) he construed the terms of the Confidentiality Agreement to which he is a party, and (2) he served as Hancock's party-appointed arbitrator in the first arbitration.

Trustmark relies on *International Insurance Co. v. Certain Underwriters at Lloyd's of London*, 1992 U.S. DIST. LEXIS 22851 (Sept. 8, 1992) for the proposition that ████ can be found to be "disinterested" on the second ground. In that case, the court disqualified an arbitrator on two grounds, one of which was his participation in other arbitrations involving one of the same parties. The court found it likely that the arbitrator would hear evidence in one arbitration that might bear on issues raised in the other, noting that such evidence would be *ex parte*. *Id.* at *6-7. The court then cites as authority cases which address the issue of *ex parte* acts by arbitrators as misconduct. That is not the situation here. Trustmark is not alleging *ex parte* acts by ████, nor could it, since it was a party to the first arbitration.

Notwithstanding my disagreement with this reasoning, I find that ████ is not a disinterested arbitrator. To begin, he breached the Confidentiality Agreement to which he was a party.[3] By his failure to abide by the Agreement, he has breached his duty to Trustmark, who in this case, was the beneficiary of the Agreement,[4] and Trustmark may seek to hold ████ liable

---

[3] I should also note that by virtue of this breach, ████ violated this court's order confirming confidentiality of the First Arbitration award.

[4] Had confidentiality of the First Arbitration award been maintained, there would have been no preclusion order and Trustmark would have had the benefit of relitigating the retrocessional business issue notwithstanding the first panel's finding against Trustmark on the matter.

for his breach depending on the circumstances that arise as the Second Arbitration proceeds.  It is true that party-appointed arbitrators are not held to the same neutrality standards as umpires.  *See e.g., Winfrey v. Simmons Foods, Inc.*, 495 F.3d 549, 552 (8th Cir. 2007) ("The requirement that neutral arbitrators make disclosures does not extend to party-appointed arbitrators.").  However, ████████ position now renders him interested in the outcome of the arbitration, in violation of the parties' Underwriting Agreement.

Furthermore, by breaching the Agreement, ██████ has now become a fact witness not subject to examination.  We typically operate under the presumption that judges and arbitrators can disregard what they already know.  This is a strong presumption with regard to arbitrators since, due to the non-binding nature of arbitration, they must routinely determine whether or not to consider an earlier arbitration in the course of a subsequent one.  However, here, ██████ has already demonstrated that he may well be unable to do this if he continues to serve on the second panel.[5]  In Trustmark's vetting of ██████ as part of the Second Arbitration, ██████ expressed some doubt that he would be able "to segregate" information he had from the First Arbitration, and stated that he would find it "difficult to deal with where the other panel members did not have the same full knowledge."  Trustmark points to one instance where, in a conference related to the Second Arbitration, Hancock made a point about a disputed issue in the First Arbitration, and ██████, in support of Hancock, described his recollection of the First Arbitration.  In response to Trustmark's objection, ██████ commented with regard to characterizations of

---

[5] Because ████ and ██████ were not parties to the Confidentiality Agreement and therefore did not breach it, I have no reason to think that they will be unable to set aside their review of the First Arbitration and reconsider the retrocessional business question anew, in light of the new evidence that will be introduced.  I see no grounds for their disqualification at this time.

certain claims made in the First Arbitration, "I feel it is my duty to correct the record as best as I understand in that regard." The hypothetical posited by ███████ during the organizational meeting became realized, and by his actions, he rebutted the presumption that he could disregard knowledge he already had. While party-appointed arbitrators need not be completely impartial, they must be able to adhere to the parties' agreements and the orders of this court. *See Stef Shipping Corp. V. Norris Grain Co.*, 209 F. Supp. 249, 253 (S.D.N.Y. 1962) (although party-appointed arbitrators need not be impartial, arbitration award may be vacated by reason of arbitrator misconduct). Trustmark has demonstrated a strong likelihood of success on the merits of its claim to disqualify ███████.

Trustmark argues another contract claim, maintaining that the Confidentiality Agreement is not subject to arbitration. "[W]hether the parties have submitted a particular dispute to arbitration (i.e., the question of arbitrability) is an issue for judicial determination unless they 'clearly and unmistakably' provided otherwise in their agreement." *Duthie v. Matria Healthcare*, Inc., 535 F. Supp. 2d 909, 915 (N.D. Ill. 2008) (citing and quoting *Howsam v. Dean Witter Reynolds Inc.*, 537 U.S. 79, 82 (2002)). The Confidentiality Agreement contains no arbitration clause, and according to Trustmark, it is up to this court to decide whether it is arbitrable by the Second Panel. It is true that in the Underwriting Agreement, the parties agreed to submit to arbitration "any dispute or difference between the General Manager and the John Hancock relating to the interpretation or performance of this agreement, including its formation or validity, or any transaction. . ." However, "[a] dispute that arises under one agreement may be litigated notwithstanding a mandatory arbitration clause in a second agreement, even where the two agreements are closely intertwined." *Industrial Electronics Corp. of Wisconsin v. iPower*

*Distribution Group, Inc.*, 215 F.3d 677, 681 (7th Cir. 2000). It is difficult to see how the Confidentiality Agreement relates to the performance of the Underwriting Agreement or the validity of the cession. Trustmark has relatively strong likelihood of success on the merits of this claim.

Furthermore, Trustmark cannot be forced to arbitrate issues that it did not agree to arbitrate. *See AT & T Technologies v. Communications Workers of America*, 475 U.S. 643, 648, (1986). "Forcing a party to arbitrate a matter that the party never agreed to arbitrate, regardless of the final result through arbitration or judicial review, unalterably deprives the party of its right to select the forum in which it wishes to resolve disputes[,]" causing irreparable harm. *Chicago School Reform Bd. of Trustees v. Diversified Pharmaceutical Services, Inc.*, 40 F. Supp. 2d 987, 996 (N.D. Ill. 1999). This is a harm faced uniquely by Trustmark if it is denied relief and such harm tips the scale in favor of granting injunction. This irreparable harm, coupled with Trustmark's success on the merits, militates in favor of granting an injunction in this case.

The balance of harms favors Trustmark as well. The harm to Hancock, should my decision here be in error, is a delay in an arbitration which it might win resulting in a loss of interest on funds due to it and this harm is itself not irreparable. The harm to Trustmark of an erroneous decision to deny injunction is an arbitration before a panel which includes a disqualified arbitrator resulting in a flawed and costly process, the result of which might settle nothing. An injunction in this case is consistent with the public interest.

**IV. CONCLUSION**

For the foregoing reasons, Trustmark's motion for preliminary injunction is granted in

that I am enjoining the parties' participation in the Second Arbitration with ███████ on the panel.

ENTER:

_James B. Zagel_

James B. Zagel
United States District Judge

DATE: January 21, 2010